**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

MATTHEW J. ROACH,

                           Plaintiff,

        - v -                                          Civ. No. 9:13-CV-866
                                                                        (TJM/DJS)

DEPUTY OKUN, *et al*,

                           Defendants.
_____

**APPEARANCES:**                                                              **OF COUNSEL:**

MATTHEW J. ROACH
Plaintiff, *Pro Se*
116 Edgemere Road
Syracuse, N.Y. 13208

ONONDAGA COUNTY ATTORNEY               CAROL L. RHINEHART, ESQ.
Attorney for Defendants
John H. Mulroy Civic Center
421 Montgomery Street
10th Floor
Syracuse, N.Y. 13202

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

      Before the Court is the Defendants' Motion for Summary Judgment.[1] Dkt. No. 38. *Pro se* Plaintiff Matthew Roach opposes Defendants' Motion.[2] For the reasons set forth below, is hereby

---

[1] Defendants' Motion papers consist of: Dkt.No. 38-1, Defs.' Rule 7.1 Statement of Material Facts ("Defs.' SMF"); Dkt. Nos. 38-2, Aff. of Carol Rhinehart, Esq., dated Aug. 25, 2014; Dkt. No. 38-4, Aff. of Angela Bush, dated Aug. 20, 2014; Dkt. No. 38-8, Aff. of Daniel Lavy, dated Aug. 20, 2014; Dkt. No. 38-9, Aff. of Benjamin Okun, dated Aug. 25, 2014; Dkt. No. 38-13, Aff. of Ronald Stratton, dated Aug. 25, 2014; Dkt. No. 38-17, Aff. of Jayuan Willis, dated Aug. 25, 2014; Dkt. No. 38-18, Defs.' Mem. of Law; Dkt. No. 39, Pl.'s AHR; Dkt. No. 118, Supp. Aff. of Carol Rhinehart, dated Mar. 17, 2017; and Dkt. No. 118-1, Defs.' Supp. Mem. of Law.

[2] Plaintiff's opposition papers consist of: Dkt. No. 73,Affirm. of Matthew Roach, dated Mar. 6, 2015; Dkt. No. 92, Pl.'s Rule 7.1 Counter-Statement of Material Facts; Dkt. No. 92-1, Aff. of Matthew Roach, dated July 29, 2015; and Dkt. No. 92-2, Pl.'s Resp. Mem. of Law.

recommended that the Defendants' Motion be **granted in part and denied in part.**

## I. BACKGROUND

### A. Facts

Many of the facts regarding this matter are not in significant dispute, and those facts are summarized as follows: In the evening hours of July 20, 2012, Plaintiff Matthew Roach was brought to the Onondaga County Justice Center by the City of Syracuse police after they had arrested him.[3] Dkt. No. 38-17, Willis Aff. at ¶ 3. The Defendants maintain that the Plaintiff was uncooperative during the booking process, Dkt. No. 38-8, Lavy Aff. at ¶¶ 6-8 & Willis Aff. at ¶¶ 5-6, and while Plaintiff denies this, he acknowledges that he was "loud" and as a result he was placed in one of the holding cells, *see* Dkt. No. 1, Compl at ¶ 6.

While in the holding cell, Plaintiff climbed on top of the cell sink. Compl. at ¶ 6; Dkt. No. 38-9, Okun Aff. at ¶ 11; Willis Aff. at ¶ 11. Defendant Deputy Okun ordered Plaintiff's cell door to be unlocked, and when the cell door opened, he stepped into the cell. Compl. at ¶ 6; Okun Aff. at ¶¶ 13-15. While Plaintiff was still standing on top of the sink, Deputy Okun administered a chemical agent, Vexor, commonly referred to as pepper spray. Compl. at ¶ 6; Okun Aff. at ¶ 15. Plaintiff climbed down from the sink and attempted to decontaminate himself by taking off his pants, soaking them in the toilet, and then rubbing them on his face and body. Compl. at ¶ 6; Okun Aff. at ¶ 15; Lavy Aff. at ¶ 16. Plaintiff was eventually escorted to the eye wash station, and his eyes were decontaminated. Lavy Aff. at ¶ 18; Willis Aff. at ¶ 15. The parties dispute how much time elapsed before Plaintiff was escorted to the eye wash station. *Compare* Lavy Aff. at ¶ 18 *with* Compl. at ¶ 6.

---

[3] Plaintiff notes that the charges against him were ultimately dismissed. Compl. at ¶ 4(c).

Defendants allege that later that evening Sgt. Bush[4] served Plaintiff with a misbehavior report and an administrative segregation notice. Dkt. No. 38-4, Bush Aff. at ¶¶ 23 & 26. Plaintiff denies that Sgt. Bush served him with a misbehavior report or with an administrative segregation. Dkt. No. 92, Pl.'s Counter-SMF at ¶ 33. At approximately 8:30 p.m., on July 20, 2012, Plaintiff was moved to the special housing unit. Bush Aff. at ¶ 28.[5] On July 25, 2012, a disciplinary hearing was conducted by Defendant Deputy Stratton. Dkt. No. 38-13, Stratton Aff. at ¶ 11. Plaintiff was found guilty of all the charges and sentenced to a total of twelve days of administrative segregation. Stratton Aff. at ¶ 15; Dkt. No. 92, Pl.'s Counter-SMF at ¶¶ 40-44.

### B. Procedural History

Plaintiff filed the Complaint in this action on July 23, 2013. Compl. On October 8, 2013, the Honorable Thomas J. McAvoy, Senior United States District Judge, granted Plaintiff's Motion to Proceed *in Forma Pauperis*, and conducted an initial review of the Complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A. Dkt. No. 8. Judge McAvoy liberally construed Plaintiff's Complaint to assert the following claims: (1) an excessive force claim against Defendant Okun; (2) a due process claim against Defendant Stratton based upon Plaintiff's placement into administrative segregation; and (3) a due process claim against Defendant Stratton based upon Plaintiff's disciplinary hearing. *Id.* at pp. 4-5. Following his initial review, Judge McAvoy dismissed Plaintiff's claim that he was denied due process in connection with his disciplinary hearing and allowed Plaintiff's remaining claims to proceed. *Id*. at pp. 5-8.

---

[4] Sgt. Bush is not a defendant to this action.

[5] Although not determinative to the present Motion, the Court notes that on the video, Disc 5, the officer moving Plaintiff to special housing identifies the date as July 21, 2012.

Defendants filed the present Motion for Summary Judgment on August 27, 2014. Dkt. No. 38. After Plaintiff had responded to the Motion, the District Court issued a decision on Plaintiff's previously filed Motion for Reconsideration of the District Court's initial review. *See* Dkt. No. 112. The District Court granted in part Plaintiff's Motion for Reconsideration, determining that the Court had erred in initially dismissing Plaintiff's claim against Defendant Stratton for an alleged due process violation relating to the Plaintiff's disciplinary hearing, when the Court applied the standard applicable to a convicted prisoner rather than someone in Plaintiffs position as a pretrial detainee. *See id.* Following that decision, this Court permitted Defendants to supplement their previously filed Motion for Summary Judgment to address the newly reinstated due process claim, and granted Plaintiff a further opportunity to respond. *See* Dkt. No. 114.

### C. Audio and Video Discs[6]

In reviewing the Plaintiff's opposition papers it is evident that he places significant reliance upon certain audio and visual discs to support his claims and refute the Defendants' argument that they are entitled to Summary Judgment. *See* Dkt. No. 73, Roach Affirm. at ¶ 7 ("[T]he evidence to support these claims will be found in the DVD's and the CD's."); Dkt. No. 92-1, Roach Aff. at ¶¶ 9-10, 21-25, & 29. Because of his position as an inmate within the facility, Mr. Roach did not have access to those discs. Accordingly, on March 17, 2017, the Court issued an Order directing that the Defendants provide the Court with the five discs previously shown the Plaintiff, as well as an unredacted copy of the facility's use of force policy. Dkt. No. 119. That Order was complied with on March 24, 2017. Dkt. No. 121. With regard to the videos provided by Defendants' counsel at

---

[6] As the Supreme Court has noted, reliance upon a video record in connection with a summary judgment motion is wholly appropriate. *Scott v. Harris*, 550 U.S. 372, 379-80 (2007).

the Court's request,[7] those videos consist of the following:

    Disc 1.  "Booking Intake 1 & Bk Circle North" (Audio and Video).

    Disc 2.  "Booking Intake 1 and Booking Intake 2" (Audio Only).

    Disc 3.   "Booking Medical" (Video Only).

    Disc 4.  "SERT DVD" (Audio and Video of move from holding cell to eyewash station).

    Disc 5.  "Camcord TL to Pod 5B"  (Audio and Video).

The Court has carefully reviewed the discs that have been provided, and summarizes their relevant content as follows:

- Disc 1 records Plaintiff, off-camera, being loud and argumentative on July 20, 2012 at 4:57 p.m., and being asked by staff to "calm down." At 4:59:45, Plaintiff is transported in front of the camera and at 5:00 pm he is placed in the holding cell some distance away.[8]  At 5:28 the Plaintiff can be heard screaming, but it cannot be determined exactly what he says.  At 5:30:33 Plaintiff can be seen climbing up on his sink located within the holding cell.  At 5:31:25 p.m. an officer walks over to the cell door, and shortly thereafter the door is opened.  At 5:32:04 p.m., the officer leans in.  Other officers then arrive.  At 5:32:24 p.m., the Plaintiff steps down from the sink, the officers leave, and the cell door is closed and.  At 5:44 p.m., four officers enter the Plaintiff's holding cell.  At 5:45 p.m., the Plaintiff is taken out of the cell, and at 5:45:51 p.m., he is walked in front of the camera dressed in boxers, with no shirt, and with a restraint across his chest.[9]  He arrives at the eyewash station at 5:46 p.m.[10]

---

[7] The discs and use of force policy are retained by the Clerk of the Court's office, and are cited herein as "Disc"1-5, or " The Use of Force Policy."

[8] It is noted that the holding cell is depicted in the top left corner of the video, and what is shown is a distant view of the outside of the door to that cell, which has a glass window, which therefore allows the camera to capture some actions within the cell.

[9] The Complaint asserts that the Plaintiff was left naked before corrections officers and inmates, Compl. at ¶ 6, but the video belies such an assertion.

[10] In the Complaint, Plaintiff alleges that it took authorities forty-five minutes to decontaminate him from the effects of the pepper spray.  Compl. at ¶ 6.  Disc 1, however, discloses that it took a total time of fourteen minutes,
                                                                                                                                                          (continued...)

- Disc 2 is a reproduction of the audio contained on Disc 1.

- Disc 3 shows the medical section of the facility and its contents are not relevant to the present motion.

- Disc 4 contains a recording made with the use of a handheld recorder, and displays a corrections officer preparing to enter holding cell #1 on July 20, 2012, and depicts the Plaintiff within the cell washing his face and body with his pants, soaked in toilet water, and screaming. Disc 4 further depicts the Plaintiff as he follows the instructions of the lead extraction team member, and is placed in restraints and then brought out of the cell and is escorted, in restraints, and taken to the eyewash station where his eyes are flushed. He is then escorted back to holding cell # 2.

- Disc 5 is a camcorder recording of the Plaintiff's relocation from holding cell # 3 to Pod 5-B. The officer identifies the date as July 21, 2012. Plaintiff is compliant, is fully dressed and with glasses, and is again placed in a chest restraint for the transfer. While being escorted, there are certain papers that are folded and held in place by the chest restraint. At the end of the transport, Plaintiff is strip-searched and given a mattress. He retained his paper work in the cell.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

---

[10](...continued)
including the time to have an extraction team respond.

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)). "A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist." *Colon v. Coughlin*, 58 F.3d at 872.

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*,

*Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Excessive Force Claim

Plaintiff asserts an excessive force claim based on the application of pepper spray against him. Compl. at ¶ 7. As clarified by the Supreme Court in *Kingsley v. Hendrickson*, a pretrial detainee's excessive force claim, brought under the Fourteenth Amendment's Due Process Clause, is governed by an objective, and not a subjective, standard. *Kingsley v. Hendrickson*, __ U.S. __, 135 S. Ct. 2466, 2473-74 (2015). In particular, a pretrial detainee asserting an excessive force claim need "show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at p. 2473. In making that objective determination, the court must view the matter from "the perspective of a reasonable officer on the scene," and consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* Moreover, the court must account for the need of a municipality to manage its facility, and grant appropriate deference to the policies and practices that "are needed to preserve internal order and discipline and to maintain institutional security." *Id*. (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)). Because of the objective nature of the test, a plaintiff's allegations regarding a defendant's subjective motivation are irrelevant. *See Graham v. Connor*, 490 U.S. 386, 397 (1989) (stating that an officer's application of force is excessive if it is objectively unreasonable "in light of the facts and circumstances confronting [him], without regard to [his]

underlying intent or motivation.").

Applying this standard, the Court considers whether Defendant Okun's use of the chemical agent against Plaintiff was objectively unreasonable. As noted by the Second Circuit, infliction of such a chemical agent has a variety of incapacitating and painful effects and therefore constitutes a significant degree of force, and "should not be used lightly or gratuitously against an arrestee who is complying with police commands or otherwise poses no imminent threat." *Tracy v. Freshwater*, 623 F. 3d 90, 98 (2d Cir. 2010); *see also Brown v. City of New York,* 798 F.3d 94, 100-04 (2d. Cir 2015).

There is no question that if the facts presented by the Defendants in their Motion papers are found to be true and accurate, then the use of the pepper spray in this case was appropriate. According to the Defendants, Plaintiff was attempting to damage the cell's sprinkler system, and had refused verbal commands to get down from the sink. *See* Bush Aff. at ¶ 9. Plaintiff in his papers concedes that breaking a sprinkler head poses a serious threat to the safe and secure operations of the Justice Center. Dkt. No 92 at ¶ 13. Plaintiff, however, disputes many of the facts presented by the Defendants. Specifically, Plaintiff disputes that he was attempting to damage the sprinkler system, and maintains that there was no sprinkler on the cell ceiling, but that rather it was on the wall. Pl.'s Counter-SMF at ¶ 10; Roach Aff. at ¶¶ 10 & 23. Plaintiff also disputes that he was given orders or directions to get down from the sink prior to the application of the pepper spray. Pl.'s Counter-SMF at ¶ 11.

The difficulty for Plaintiff, however, is that even if the Plaintiff's non-conclusory facts are accepted, Defendant Okun's use of pepper spray was either objectively reasonable, such that there was no constitutional violation, or in the alternative, was arguably reasonable, such that Officer

Okun is entitled to qualified immunity. In particular, Plaintiff alleges that he was despondent and suicidal. Compl. at ¶ 6 ("[I] began having negative thoughts of wanting to die and more thoughts of hurting myself and proceeded to get up onto the sink in the booking cell. . . ."). Plaintiff admits that he stated to authorities that he was planning on performing a "Navy dive off of this sink" and requested to be seen by mental health. *Id.*; Pl.'s Counter-SMF at ¶ 9.

Accepting the Plaintiff's version of events, therefore, Defendant Okun was faced with a suicidal inmate perched on an elevated sink, who was threatening to dive headfirst onto the floor. Even assuming that Okun did not give verbal instructions to the Plaintiff to get down, he was faced with a serious risk to inmate safety with little time to act. *See Monday v. Oullette*, 118 F.3d 1099, 1104-05 (6th Cir. 1997) (finding that use of pepper spray against suicidal plaintiff was appropriate as a matter of law under the facts presented to the officer). Balancing the pain and discomfort caused by the spray, against the serious risk of catastrophic injury, or death, poised by the Plaintiff's actions, the Court concludes that the use by Okun of the pepper spray was objectively reasonable. The Court notes that even though a verbal warning, under Plaintiff's recitation of the events, was not given, Plaintiff admits that he was aware that Okun unlocked and entered the cell. *See* Pl.'s Counter-SMF at ¶ 15. Plaintiff was also aware of the imminent danger that his position created; indeed, he was intending to use that danger to seek mental health assistance.

Courts are not to judge a particular use of force with "the 20/20 vision of hindsight," but rather from the perspective of the officer on the scene. *Kingsley v. Hendrickson*, 135 S.Ct. at 2473. The circumstances forced Okun to make a split-second judgment, and a wrong decision may well have left the Plaintiff catastrophically injured. The decision by Okun to use the pepper spray, as opposed to attempting to tackle the Plaintiff from an elevated height which itself, could result in

injuries, or to talk Plaintiff down, which would provide him with additional time to injure himself, was a reasonable one in the Court's view. This is borne out by the fact that after the pepper spray was applied, Plaintiff stepped off the sink and was subdued with no further injury to himself or to anyone else.[11]

The Plaintiff's conclusory allegation that Defendant Okun used an excessive amount of pepper spray during the event is also insufficient to create a triable issue of fact. Okun maintains that he utilized two one-second bursts of spray to Plaintiff's face. Okun Aff. at ¶ 15; Dkt No. 38-11, Okun Aff., Ex. B. Courts have upheld lengthier applications of pepper spray. *E.g.*, *Clement v. Gomez*, 298 F.3d 898, 903-04 (9th Cir. 2002) (finding that two five-second bursts of pepper spray to quell fighting in cell did not constitute excessive force). Plaintiff, while not identifying the length of time that he was pepper sprayed, claims that Okun sprayed him from his feet to his face, and discharged "almost an entire can." Pl.'s Counter-SMF at ¶ 19; Roach Aff. at ¶ 40. Regarding the use of pepper spray against Plaintiff's body, there has been no showing by the Plaintiff that the application of pepper spray to one's clothes would have any significant effect as the spray is designed to affect the eyes and respiratory system. *See* Use of Force Policy, IV.C; *see also Park v. Shiflett*, 250 F.3d 843, 849 (4th Cir. 2001) ("The effects of OC spray include (1) dilation of the capillaries and instant closing of the eyes through swelling of the eyelids, (2) immediate respiratory inflammation, including uncontrollable coughing, retching, shortness of breath and gasping for air with a gagging sensation in the throat, and (3) immediate burning sensations to the mucous membranes, skin and inside the nose and mouth."). Furthermore, and most significant to the Court,

---

[11] This is not intended to minimize the painful effects of the pepper spray on Plaintiff, which are clearly shown on Discs 1 & 5.

it is not alleged that Okun used any pepper spray *after* the Plaintiff had resolved the danger by coming down from the sink. *Cf. Tracy v. Freshwater*, 623 F.3d at 98 (reversing the district court's grant of summary judgment for an officer's deployment of pepper spray "mere inches away from the face" of a suspect who was "already in handcuffs and offering no further active resistance" ); *see also Cabaniss v. City of Riverside*, 231 F. App'x 407, 413 (6th Cir. 2007) ("As a general rule, we have held that the use of pepper spray is excessive force when the detainee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else.") (internal quotation marks and citation omitted). Thus, Plaintiff's claims regarding the amount of pepper spray used by Okun do not create a triable issue of fact as to the objective reasonableness of Okun's actions.

Even if there were questions of fact regarding the reasonableness of the application of the pepper spray, the Court would nonetheless recommend dismissal of this claim on qualified immunity grounds. *See Saucier v. Katz*, 533 U.S. 194, 205 (2001) ("An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense."). Qualified immunity provides a "shield[ ] . . . from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. . . . To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks and citations omitted). Qualified immunity attaches if "'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In other words, qualified immunity "provides ample

protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341. Although it is not the case that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson Creighton*, 483 U.S. 635, 640 (1987).

As noted above, officers of reasonable competence could conclude that, even under Plaintiff's version of events, immediate entry into the cell and application of the pepper spray was necessary in light of the Plaintiff's threat to injure himself, and his position on the sink indicating that he intended to carry though on that threat. Alternatively, pepper spray would also have been considered appropriate by a reasonable corrections officer to prevent the Plaintiff from causing serious harm to the facility by damaging the sprinkler system. Therefore, even if this Court were to conclude that questions of fact exist regarding the objective reasonableness of the use of force on Plaintiff, the Court would nonetheless conclude that it would not have been apparent to reasonable deputy on the scene that the use of the pepper spray under the circumstances, even as presented by the Plaintiff himself, was excessive.[12]

Accordingly, the Court recommends that Defendants' Motion be **granted** as to Plaintiff's excessive force claim.

---

[12] The Plaintiff argues that the application of the pepper spray upon him violated clearly established constitutional law, in part, because it was applied in violation of the County's Use of Force Policy. Setting aside the well established principal that violations of state statutory or administrative policy do not necessarily invalidate a claim of qualified immunity, *Davis v. Scherer*, 468 U.S. 183, 194 (1984), it is not at all clear that a violation has been established. The Policy in question indicates the pepper spray may only be used by a properly trained officer, but Defendant Okun has submitted an undisputed affidavit that he was so trained. Okun Aff. at ¶ 2. Further, while it is true that generally only supervisors trained in the use of chemical agents may authorize its use by a subordinate, the Use of Force Policy specifically provides an exemption where "there is an imminent danger of harm to staff, inmates, or the public. . . and the staff members present believe immediate intervention is required to prevent the danger or harm." Use of Force Policy at IV.A.

### C. Due Process Claims

The Court next turns to Plaintiff's due process claims against Defendant Stratton regarding the notice he received of his placement in administrative segregation and of his disciplinary hearing. Plaintiff specifically claims that he (1) never received notice of his placement in administrative segregation and (2) only received notice of his disciplinary hearing twenty minutes before it was held when he was given a copy of his misbehavior report by Defendant Deputy Stratton. Pl.'s Counter-SMF at ¶¶ 33 & 39.

Plaintiff's claim regarding notice of his placement in administrative segregation is readily disposed of because there is no evidence that Defendant Stratton had any part in placing Plaintiff in the special housing unit. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Accordingly, the Court recommends that Plaintiff's due process claim against Stratton for failure to provide notice of his placement in administrative segregation be **dismissed** for lack of personal involvement.

With respect to Plaintiff's claim based on the notice of his disciplinary hearing, the law is well-settled that due process requires that a pretrial detainee who is facing disciplinary segregation be entitled to, among other things, notice of the charges at least twenty-four hours prior to his disciplinary hearing. *See Wolff v. McDonnell*, 418 U.S. 539, 564 (1974). In fact, the Second Circuit has pointedly noted that the twenty-four hour notice provision is no mere formality, but rather central to assure a degree of fairness to the proceeding:

> It compels the charging officer to be more specific as to the misconduct with which

> the inmate is charged; it serves to narrow the inquiry at the hearing to the misconduct alleged; it informs the inmate of what he allegedly has done so that he can prepare a defense, if he chooses, to the specific charges set forth, based on whatever evidence he can muster, given the limited time available and the lack of an opportunity to interview or call witnesses; and it aids the fact finder to reach an informed decision. . . .

*McKinnon v. Patterson*, 568 F.2d 930, 940 n. 11 (2d Cir. 1977).

Part of a hearing officer's responsibility is to determine if proper notice was given and if not, to adjourn the hearing to provide the inmate with an opportunity to mount a defense. *C.f. Martin v. Mitchell*, 1995 WL 760651, at *1 -3 (N.D.N.Y. Nov. 24, 1996) ("To ensure a fair hearing, defendant Mitchell adjourned the hearing and served plaintiff with a copy of the misbehavior report . . . which guaranteed that plaintiff would have sufficient time to prepare his defense, [and] cured any deficiency in notice that may have occurred.").

Plaintiff asserts that the lack of such notice prevented him from preparing for the hearing or calling relevant witnesses. As stated cogently in the Plaintiff's Complaint:

> Then I was given my misbehavior report approximately seven (7) days later by Deputy Stratton of the Onondaga County Sheriffs Dept. and afforded no opportunity to prepare a defense or use the Law Library nor given the Title 9 NYCRR section 7001.1 et. seq. on disciplinary hearings nor given notice of administrative segregation 7006 and my disciplinary hearing was held approximately one half hour later nor was I allowed to call any witnesses or given any decision on my appeal.

Compl. at ¶ 6.

Defendant asserts that Plaintiff was in fact provided with advance notice of his disciplinary hearing. Sgt. Bush claims that on July 20, 2012, at 7:50 p.m. she personally served Plaintiff with the inmate misbehavior report/hearing notice. Bush Aff. at ¶ 23; Dkt. No. 38-6, Bush Aff., Ex. B. According to Sgt. Bush, after she read the form to Plaintiff, he refused to sign the form acknowledging receipt. Bush Aff. at ¶¶ 22-25. She then wrote "refused to sign" and handed him a copy of the report, and sent another to administration, which was then provided to the hearing

officer. *Id.* at ¶ 25; Stratton Aff. at ¶ 8. In addition to Sgt. Bush's assertions, Officer Lavy states that, on July 20, 2012, at approximately 8:00 p.m., he participated in the move of Plaintiff from the holding room to special housing, and at that time Plaintiff had the paperwork that Sgt. Bush had provided to him.[13] Lavy Aff. at ¶ 23. Plaintiff disputes that he was provided, either orally or in writing, with any notice by Sgt. Bush on July 20, 2012. Pl.'s Counter-SMF at ¶¶ 32-34.

The Court's function on a motion for summary judgment is not to determine credibility, nor to weigh the evidence. In this case a material factual dispute clearly exists regarding when the Plaintiff was provided with notice of the disciplinary hearing and the charges against him. The hearing officer, Defendant Stratton, maintains that Sgt. Bush provided such notice, and that he relied upon the paperwork indicating that Plaintiff refused to acknowledge receipt of such notice. Stratton Aff. at ¶¶ 8-11. Plaintiff, on the other hand, claims that Stratton, not Sgt. Bush, provided him with the notice, and that the notice was provided such a short time before the hearing that, in effect, it amounted to no notice at all. Pl.'s Counter-SMF at ¶¶ 31-39. Stratton denies that he provided the notice of the disciplinary hearing to Plaintiff. Stratton Aff. at ¶ 12.

For all the foregoing reasons, the Court concludes that questions of fact do exist regarding Plaintiff's due process claim premised upon lack of adequate notice. *But see Rodriguez v. Lindsay,* 498 F. App'x 70, 71 (2d Cir. 2012) ("While there is some discrepancy in the record regarding the date on which Rodriguez received the incident report, it is apparent that he received the report by January 5, 2009 at the latest, which was two days before his initial hearing and nine days prior to his final hearing before the Discipline Hearing Officer."). Moreover, because the requirement of

---

[13] The Court notes that Disc 5, which records the transport from holding cell 3 to administrative segregation, does indeed show the Plaintiff being transferred with certain paperwork, but there is no way to tell from the video what that paperwork consists of.

providing twenty-four hours advance notice was clearly established at the time of the events at issue, Defendant Stratton is not entitled to qualified immunity on this record. *See Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 613-14 (S.D.N.Y 2009) (explaining that "inmate's due process right to receive advance written notice of the disciplinary charges" is clearly established). Whether Stratton will ultimately be afforded qualified immunity, therefore, must await further factual development at trial.

Accordingly, it is recommended that Defendants' Motion for Summary Judgment on Plaintiff's due process claim based upon lack of notice be **denied**.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 38) be:

(1)  **GRANTED** as to Plaintiff's claim for excessive force against Defendant Okun;

(2)  **GRANTED** as to Plaintiff's claim against Defendant Stratton based upon lack of notice for placement in special housing;

(3)  **DENIED** as to Plaintiff's sole remaining claim regarding denial of due process in connection with his disciplinary hearing; and it is further

**RECOMMENDED**, that the Defendant Okun be dismissed as a Defendant herein; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL**

**PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   June 5, 2017
         Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge